## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:08CV-94-JHM**

**OWENSBORO GRAIN COMPANY, LLC**                                                    **PLAINTIFF**

**VS.**

**AUI CONTRACTING, LLC, et al.**                                                                           **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Plaintiff, Owensboro Grain Company, for summary judgment on its breach of contract claim against Defendant, AUI Management, LLC [DN 22]. Fully briefed, this matter is ripe for decision.

### STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

## BACKGROUND

Plaintiff, Owensboro Grain Company ("Owensboro Grain"), produces edible oils and soy products. Owensboro Grain, as part of a federal government program, supplied refined soybean oil ("soyoil") products to Advocacy and Resources Corporation ("ARC"). ARC filed a voluntary Chapter 11 bankruptcy petition in June of 2006. After ARC filed for bankruptcy, Defendant Jeffery Callahan formed AUI Management to manage ARC and act as a middleman for the transactions between Owensboro Grain and ARC. After June of 2006, AUI Management purchased soyoil from Owensboro Grain and then resold the soyoil to ARC. ARC then packaged the soyoil and sold it to the United States Department of Agriculture ("USDA").

Owensboro Grain sold soyoil to AUI Management pursuant to a Credit Agreement. The Credit Agreement provides that AUI Management will pay Owensboro Grain within 30 days of the date of each invoice and, if it fails to do so, interest will accrue on the amounts owed. (Credit Agreement at ¶ 3, 6.) The Credit Agreement states that Owensboro Grain may take whatever steps necessary to collect the unpaid balance of any outstanding invoices where the default is not cured within 10 days. (Id. at ¶ 7.) The Credit Agreement also provides that if the maximum credit established in the Credit Agreement is reached before the due date of any of the outstanding invoices under the 30-day payment terms, "seller may suspend all future shipments under contract to be shipped until buyer pays seller sufficient funds to keep the total of all unpaid invoices under the maximum credit limit." (Id. at ¶ 4.) The Credit Agreement established the credit limit of $1,400,000 and required AUI

Management to provide a $500,000 letter of credit. Jeffrie Erb, Owensboro Grain's Chief Financial Officer, testified that the credit limit set forth in the Credit Agreement was amended once to increase the limit from $1,400,000 to $1,800,000 after AUI Management replaced the $500,000 letter of credit it had provided as security with a $900,000 letter of credit. While Owensboro Grain argues that there was only one such modification of the credit limit, AUI Management asserts that there were in fact several oral modifications. (Glen Tilton Affidavit ¶ 9.)

Owensboro Grain brought suit against Defendants, AUI Contracting, LLC, AUI, LLC, AUI Management, LLC, CPI Leasing, Inc. and Jeffrey Callahan, alleging that Defendants failed to pay invoices within 30 days, failed to remedy said defaults, and rejected demands for payment. Owensboro Grain asserts that as of September 23, 2008, the total principal amount owed by Defendants to Owensboro Grain for the breach of the Credit Agreement is $2,308,972.04. The Complaint contains five counts. Specifically, Count I seeks a declaratory judgment, Count II alleges breach of contract, Count III alleges fraud, Count IV alleges the corporate veil should be pierced, and Count V seeks a pre-judgment attachment of assets. At this time, Owensboro Grain seeks summary judgment on its declaratory judgment and breach of contract claim (Count I and II) against only Defendant, AUI Management, LLC, arguing that AUI Management admits that it was a party to the Credit Agreement and that it has failed to pay the invoices in question.

In response to the motion for summary judgment, AUI Management admits that there are certain invoices from Owensboro Grain for soyoil that it has not paid. However, AUI

Management argues that summary judgment should not be granted because it is entitled to an offset of Plaintiff's damages and Owensboro Grain's claims are barred by laches and estoppel.

**DISCUSSION**

**A.  Breach of Contract Claim**

Owensboro Grain seeks summary judgment against AUI Management on its declaratory judgment and breach of contract claims (Count I and II).  To recover for breach of contract under Kentucky law, a plaintiff must "show the existence and the breach of a contractually imposed duty." Lenning v. Commercial Union Ins. Co., 260 F.3d 574, 581 (6th Cir. 2001); Strong v. Louisville & Nashville R. Co., 43 S.W.2d 11, 13 (Ky. 1931). The elements of a breach of contract are: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff.  Id.

The Court finds that Owensboro Grain has established that AUI Management breached the Credit Agreement.  AUI Management admits that it is a party to the Credit Agreement and has failed to pay Owensboro Grain's invoices for the soyoil it sold and delivered to AUI Management pursuant to the Credit Agreement. (Answer ¶¶ 62, 18, 28.) Further, AUI Management does not contest the amount of the unpaid invoices claimed by Owensboro Grain.  The record reflects that as of September 23, 2008, the principal amount of unpaid invoices sent by Owensboro Grain for soyoil to AUI Management is $2,308,972.04.  (Declaration of Jeffrie Erb at ¶ 2.)   While not contesting the amount of unpaid invoices, AUI Management argues that summary judgment should not be granted on

the breach of contract claim because of issues of material fact exist related to its affirmative defenses of offset, estoppel and laches.

## B. Offset Claim

AUI Management pleads an offset claim as an affirmative defense to Owensboro's complaint. AUI Management claims that Owensboro Grain wrongly refused to ship soyoil pursuant to contracts which had not yet become due.[1] According to AUI Management, Kentucky law does not generally permit a seller to refuse to fulfill an order based on the buyer's default on earlier orders. Duddy v. Kitchen & Bath Distributors, Inc., 982 F.2d 945, 951 (6th Cir. 1993). The record reflects that in March of 2008, Owensboro Grain contracted to ship 1,000 metric tons of soyoil in May of 2008 at $ 0.61 per pound and 1,000 metric tons in June 2008 at $ 0.58 cents per pound. (Sales Contract, March 24, 2008; Sales Contract, March 31, 2008.) AUI Management represents that it received only 400 tons from the May contract and no shipments at all from the June contract. (Tilton Affidavit ¶ 19.) AUI Management argues that Owensboro Grain's refusal to sell Defendant soyoil forced AUI Management to cover and purchase soyoil in the market at an average of $ 0.15 per pound more than the contracted price. As a result, AUI Management contends that it is entitled to an offset for damages it incurred as a result of Owensboro Grain's breach of the futures contracts. Additionally, AUI Management asserts that when Owensboro Grain cut off

---

[1] In its First Amended Answer, AUI states that the breach by Owensboro Grain of the two future contracts occurred "[u]pon Plaintiff's determination that Purchaser's credit balance was no longer permissible." (First Amended Answer at ¶ 58.)

shipments to AUI, ARC lost a new 4800 metric ton tender offer with the USDA because neither ARC nor AUI had any other suppliers for soyoil.

In response to this argument, Owensboro Grain does not address the application of <u>Duddy</u> to the facts of this case. Instead, Owensboro Grain argues that AUI Management's offset claim fails because AUI Management failed to produce sufficient evidence that additional oral contract modifications regarding AUI's credit limit occurred. Owensboro Grain argues that there is no factual basis in Mr. Tilton's affidavit or in his testimony at the September 25 pre-judgment attachment hearing for AUI Management to claim an offset. Owensboro Grain maintains that Mr. Tilton has no personal knowledge of any facts supporting the offset claim that AUI Management has plead, and as a result, absent proof regarding specific amounts, credits, or instances of payment, summary judgment is appropriate.

In reply to this argument, AUI Management contends that the issue of whether the parties modified AUI Management's credit limit several times or only once is irrelevant to AUI Management's offset claim. AUI Management asserts that its offset claim depends on it establishing that Owensboro Grain refused to fulfill a current contract on which payment was not yet due, based on AUI's late payments on a separate previous contract, in violation of <u>Duddy</u>.

　　1. *<u>Duddy v. Kitchen & Bath Distributors</u>*

Contrary to AUI Management's argument, the holding in <u>Duddy</u> does not limit Owensboro Grain's ability to suspend shipment of existing orders under the terms of the

6

Credit Agreement in question. In <u>Duddy</u>, the Sixth Circuit recognized that a seller did not have "a legal right to withhold delivery of these orders, **which it accepted without conditions** and subject to future payment, for the reason that [a buyer] had an unpaid account for earlier orders." <u>Duddy</u>, 982 F.2d at 951. In other words, the Sixth Circuit acknowledged that under the provisions of the Uniform Commercial Code as adopted in Kentucky and most other states, "a seller may become obligated to deliver additional goods, even to a purchaser who may be delinquent on other obligations, unless the terms of acceptance of a new order specify otherwise." <u>A Survey of Kentucky Commercial Law</u>, 31 N. Ky. L. Rev. 201 (2004)(discussing <u>Duddy</u>). Unlike the terms of the contract in <u>Duddy</u> which contained no pre-shipment conditions, the terms of Paragraph 4 of the Credit Agreement in the present case permitted Owensboro Grain to suspend shipment of future orders if certain conditions existed.

*2. Paragraph 4 of the Credit Agreement*

Paragraph 4 of the Credit Agreement authorizes the suspension of all future shipments of soyoil under the Credit Agreement if the amount of unpaid invoices exceeds the credit limit.[2] Specifically, the Credit Agreement provides:

> 4. If the maximum credit established in this agreement is reached before the due date of any of the outstanding invoices under the 30-day payment terms, seller may suspend all future shipments under contract to be shipped until buyer pays seller sufficient funds to keep the total of all unpaid invoices under the maximum credit limit.

---

[2] Interestingly, neither party mentions Paragraph 4 of the Credit Agreement.

(Credit Agreement ¶ 4.) In fact, in communications with AUI Management, Owensboro Grain relied on Paragraph 4 of the Credit Agreement to suspend future shipments of soyoil to AUI Management. (June 11, 2008 Letter.) It is undisputed that at the time Owensboro Grain suspended shipment to AUI Management of future orders of soyoil, AUI Management had exceeded the credit limit of $1,800,000. It is also undisputed that after Owensboro Grain suspended future shipments of soyoil, AUI Management failed to pay Owensboro Grain "sufficient funds" to keep the total of all unpaid invoices under $1,800,000. Thus, Paragraph 4 would appear to bar AUI Management's offset claim unless AUI Management could prove additional modifications of the $1,800,000 credit limit.

### 3. *Modification of the Credit Limit*

AUI Management failed to produce sufficient evidence that additional oral contract modifications of the credit limit occurred. Jeffrie Erb, Chief Financial Officer for Owensboro Grain, testified that the credit limit set forth in the Credit Agreement was amended once from $1,400,000 to $1,800,000 after AUI Management replaced a $500,000 letter of credit it had provided as security with a $900,000 letter of credit. In contrast, Glen Tilton, Chief Financial Advisor for AUI Management, testified that the credit limit set forth in the Credit Agreement was continually modified beginning in November of 2007 and no firm credit limit was established. (See Tilton Affidavit ¶¶ 6, 8, 9.) At the pre-judgment attachment hearing, Mr. Tilton acknowledged that he was not a party to the conversations modifying the credit limit, but instead was informed of those modifications after they happened. (Transcript at 56.)

The Court finds that the statements regarding the alleged credit limit modifications made in Mr. Tilton's affidavit are not admissible evidence. Although the nonmoving party is not required to "produce evidence in a form that would be admissible at trial," Celotex, 477 U.S. at 324, "an affidavit offered in opposition to summary judgment 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" Alpert v. United States, 481 F.3d 404, 409 (6th Cir. 2007)(quoting Fed. R. Civ. P. 56(e)). "'[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.'" Id. (quoting U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1189 (6th Cir.1997)). Mr. Tilton's statement regarding the additional oral modifications of the credit limit was based solely upon information he received from others and is thus inadmissible hearsay. He did not demonstrate the personal knowledge required by Fed. R. Civ. P. 56(e). In fact, Tilton's discussion of the alleged credit limit modification is based "upon information and belief." "An affidavit based only on information or belief will not suffice." Riggs v. American Bankers Ins. Co. of Florida, 2005 WL 1475639, *6 (W.D. Ky. June 22, 2005). Therefore, AUI Management has failed to present admissible evidence that the credit limit was modified above $1,800,000.[3]

For these reasons, the Court finds that Paragraph 4 of the Credit Agreement precludes

---

[3] Additionally, AUI Management fails to put forth evidence regarding the new consideration for the alleged credit limit modification. See Francis v. Nami Resources Co., 2008 WL 852047, *5 (E.D. Ky. 2008)("[G]enerally a new consideration is required in order for an attempted modification for a contract to be valid." Id. (quoting Vinaird v. Bodkin's Adm'x, 72 S.W.2d 707, 711 (Ky. 1934)).

AUI Management's offset claim.

## C. Estoppel and Laches Affirmative Defense

In response to Owensboro Grain's motion, AUI Management argues that summary judgment is not appropriate because genuine issues of material fact exist with respect to its affirmative defenses of estoppel and laches.

*1. Estoppel*

AUI Management maintains that summary judgment on Owensboro Grain's breach of contract claim is not appropriate based on its assertion of the affirmative defense of equitable estoppel. AUI Management contends that it began exceeding the credit limit set forth in the Credit Agreement in October of 2007, and that Owensboro Grain's conduct of allowing AUI Management to repeatedly exceed the credit limit "induced reliance by AUI on the ability to do so." According to AUI Management, AUI in good faith relied on Plaintiff's representations that it would not take action under the Credit Agreement if the balances were persistently high, and therefore AUI continued running significant balances and paying them off incrementally as payments came in from ARC and the USDA. AUI Management contends that it changed its conduct to its detriment as a consequence of its reliance on Owensboro Grain's representations by not maintaining sufficient reserves to pay the full invoice balance at once when Owensboro Grain suddenly requested it to do so in June of 2008.

To prevail on a claim for equitable estoppel, a party must show "(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2)

reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment or prejudice." Sebastian-Voor Properties, LLC v. Lexington-Fayette Urban County Government, 265 S.W.3d 190, 194-195 (Ky. 2008)(quoting Electric and Water Plant Bd. of Frankfort v. Suburban Acres Development, Inc., 513 S.W.2d 489, 491 (Ky. 1974)). "It is well-established that the reliance necessary to establish a claim of equitable estoppel must be reasonable." Aculty v. Great West Cas. Co., 2005 WL 3488359, 2 (Ky. App. Dec. 22, 2005)(citing Gailor v. Alsabi, 990 S.W.2d 597 (Ky. 1999)). See also Whittinghill v. Prudential Property and Cas. Co., 2005 WL 3591989, *2 (W.D. Ky. Dec. 29, 2005)("Equitable estoppel may be invoked by an innocent party who has been fraudulently induced to change his position in reasonable reliance on an otherwise unenforceable oral agreement.").

AUI Management cannot prove that it reasonably or in good faith relied on the alleged representations with respect to the credit limit to excuse compliance with the payment terms set forth in Paragraph 3 of the Credit Agreement. In fact, the terms of the Credit Agreement expressly preclude the estoppel claim by AUI Management. The Credit Agreement provides as follows:

> 5. If the seller, at its own discretion, ships product in excess of the maximum credit established herein, the buyer is not excused from payment under the terms set forth above and will be considered in default until payment is made.

This provision makes clear that if Owensboro Grain shipped soyoil to AUI Management in

excess of the credit limit, AUI Management would not be excused from payment and would still be in default. Thus, it was unreasonable for AUI Management to rely on the alleged multiple increases in the credit limit to excuse compliance with the payment terms of the Credit Agreement.

Accordingly, this Court finds that AUI Management's equitable estoppel defense does not bar Owensboro Grain's breach of contract claim.

*2. Laches*

AUI Management raises a laches defense on the grounds that Owensboro Grain permitted AUI Management to exceed its credit limit from November 2007 until June 2008 before it claimed that AUI Management was in default and requested payment in full for those accounts. AUI Management asserts that Owensboro Grain should not be permitted to sit on its rights and lull AUI Management in believing that it could continue to pay the balance incrementally as it had been doing for six months.

Laches is an equitable defense which "'serves to bar claims in circumstances where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action." Gardner Denver Drum LLC v. Goodier, 2006 WL 1005161, * 7 (W.D. Ky. April 14, 2006)(quoting Plaza Condo. Ass'n v. Wellington Corp., 920 S.W.2d 51, 54 (Ky. 1996)). The defense of laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Cleveland Newspaper Guild v. Plain Dealer Pub. Co., 839 F.2d 1147, 1155 (6th Cir.1988)(quoting Costello v. United States, 365 U.S. 265, 282 (1961)).

In the present case, AUI Management's defense of laches is more appropriately characterized as an equitable estoppel defense which has been previously addressed. Notwithstanding, the Court finds that Owensboro Grain's breach of contract claim for payment for the soyoil sold and delivered to AUI Management clearly is not barred by the doctrine of laches. Owensboro Grain declared AUI Management in default and advised it that future shipments of soyoil had been suspended by letter dated June 11, 2008. The complaint was then filed on July 21, 2008 and seeks payment of invoices sent by Owensboro Grain to AUI Management in May and June 2008. The Court agrees with the Plaintiff that considering the short time between the sending of the invoices for which payment is sought and the filing of the complaint, AUI Management cannot demonstrate a lack of diligence by Owensboro Grain or prejudice to AUI Management. Clearly, it is not inequitable under the facts set forth in this case to enforce Owensboro Grain's current claim for payment for soyoil sold and delivered to AUI Management in May and June of 2008.

Therefore, the Court finds that AUI Management's laches defense does not bar Owensboro Grain's breach of contract claim.

## CONCLUSION

For the reasons set forth above, the Court finds that Owensboro Grain is entitled to summary judgment in its favor on its claim for breach of the Credit Agreement against AUI Management in the amount of $2,308,972.04. **IT IS HEREBY ORDERED** that the Plaintiff's motion for summary judgment on Counts I and II of the Complaint [DN 22] is **GRANTED.**

In its tendered order, Plaintiff seeks to make the order final and appealable. However, given that additional claims against AUI Management and other Defendants are still pending, in order for the Court to determine that there is "no just reason for delay" under Fed. R. Civ. P. 54(b), the Sixth Circuit requires the Court to make specific findings which the parties have not addressed. See Lowery v. Federal Express Corp., 426 F.3d 817, 820-823 (6th Cir. 2005). Plaintiff may choose to file an appropriate motion with a supporting memorandum requesting entry of a final judgment pursuant to Fed. R. Civ. P. 54(b).

cc: counsel of record